**FILED**

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

**MAR 08 2016**

CLERK

| | |
|---|---|
| BECKY CAMPBELL, | CIV. #16- 4033 |
| Plaintiff, | |
| vs. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| HENRY CARLSON COMPANY, KYBURZ-CARLSON CONSTRUCTION COMPANY, ASPHALT SURFACING CO. and HENRY "CHIP" CARLSON III, | |
| Defendants. | |

COMES NOW the Plaintiff Becky Campbell, and for her Complaint against the above-named Defendants, states and alleges as follows:

## PARTIES

1.

Plaintiff Becky Campbell (hereinafter "Plaintiff") is a resident of West Monroe, Louisiana.

2.

Defendant Henry Carlson Company (hereinafter "Defendant HCC") is, and at all times relevant hereto was, a South Dakota corporation with its principal place of business in Sioux Falls, South Dakota. Defendant HCC operates as a commercial general contractor.

3.

Defendant Kyburz-Carlson Construction Company (hereinafter "Defendant Kyburz-Carlson") is, and at all times relevant hereto was, a South Dakota corporation with its principal place of business in Aberdeen, South Dakota. Defendant Kyburz-Carlson operates as a commercial general contractor.

1

4.

Defendant Asphalt Surfacing Co. (hereinafter "Defendant ASCO") is, and at all times relevant hereto was, a South Dakota corporation with its principal place of business in Aberdeen, South Dakota. Defendant ASCO is in the paving and asphalt business. The three corporate defendants will collectively be referred to as "Defendant Companies."

5.

Defendant Henry "Chip" Carlson III (hereinafter "Defendant Carlson") is, and at all times relevant hereto was, a resident of Sioux Falls, South Dakota

## JURISDICTION AND VENUE

6.

Plaintiff brings this action under 28 U.S.C. § 1332, which gives the Court jurisdiction based upon the diversity of the parties. The amount in controversy exceeds the sum of $75,000.

7.

This action is properly venued with this Court pursuant to the provisions of 28 U.S.C. § 1391(b)(2) because the causes of action occurred in the Southern District of the State of South Dakota.

## FACTS

8.

In 2012, Plaintiff and Defendant Carlson entered into a contract for Plaintiff's business to perform risk management consultation services for the Defendant Companies.

9.

Plaintiff's business, Quality Care Litigation Support & Investigation Services, is a Louisiana-based business that specializes in assisting companies in reducing their insurance liability risks by managing claims such as worker's compensation benefits. Plaintiff's main office was in Monroe, Louisiana.

10.

Upon information and belief, at that time, Defendant Carlson was an officer, director and/or sole or majority shareholder of all three Defendant Companies.

11.

Sometime after she was retained by the Defendant Companies, Plaintiff and Defendant Carlson entered into an intimate relationship that involved sexual relations. Later, the relationship progressed to involve unprotected sexual relations at Defendant Carlson's request.

12.

In late 2012, Defendant Carlson offered Plaintiff the position of Risk Manager Consultant for Defendant Companies and required that she move to Sioux Falls, South Dakota, as part of her employment, and in January 2013, Plaintiff moved to Sioux Falls, South Dakota.

13.

In February 2013, Plaintiff started working as an employee of Defendant Companies at the Sioux Falls office. Plaintiff's annual salary was $38,000 per year with health insurance, dental insurance, vision insurance, retirement account matching and the potential for profit share bonuses. When Defendant Carlson offered Plaintiff the position, he promised that she could continue operating her consultation company.

3

14.

In March 2013, less than two months into Plaintiff's employment, Plaintiff had a performance review with Defendant Carlson and Plaintiff's annual salary was increased to $72,000. Defendant Carlson demanded that Plaintiff stop her independent consultation business and close her office in Monroe, Louisiana, by 2014-2015.

15.

In May 2013, Defendant Companies' human resources director quit and Defendant Carlson requested that Plaintiff assume those duties in addition to her duties as the Risk Manager Consultant. Plaintiff agreed to do so.

16.

In the fall of 2013, Plaintiff and Defendant Carlson moved in together and were engaged to be married.

17.

As part of Plaintiff's duties, she was the head of Corporate Risk Management and Corporate Human Resources departments, oversaw employees, engaged in decision making responsibilities, attended administrative, management meetings and phone conferences and, at times, even voted by proxy for Defendant Carlson in his absence at the Captive Resource Financial/Risk Management Corporate Meetings.

18.

In 2014, Plaintiff's annual salary was increased to $90,000. In addition, Plaintiff was entitled to profit sharing bonuses.

4

19.

Over the course of their relationship, Defendant Carlson informed Plaintiff that she would have lifelong employment and told her that one day he would make her the President of Defendant Companies.

20.

In March 2015, Plaintiff received a bonus of more than $19,000 paid by Defendant Companies.

21.

On May 27, 2015, Plaintiff executed a two-year employment contract from July 1, 2015, until July 1, 2017. Plaintiff was provided with a $90,000 annual salary for her duties as the Human Resources Director/Risk Management Consultant. A copy of this contract is attached hereto as Exhibit 1.

22.

In June 2015, Plaintiff's annual salary was increased to $92,700, which was the maximum amount allowed for salary increases (3%).

23.

Around this time, Defendant Carlson took a leave of absence for what he described as personal problems or relationship problems with his children to attend an inpatient therapy program in Tennessee commonly called "the Ranch." Unbeknownst to Plaintiff, the inpatient therapy program was actually for Defendant Carlson's sexual addiction. At no time did Defendant Carlson advise Plaintiff that he had a sexual addiction/love addiction, a sexually transmitted disease or that he was taking prescription medication for a sexually transmitted disease.

5

24.

Shortly before Defendant Carlson left for the sexual addiction clinic, he informed Plaintiff that he had sexual relations with his second ex-wife during his engagement with Plaintiff, but assured Plaintiff that he still loved her and would take care of her forever.

25.

As part of Defendant Carlson's sexual addiction therapy, he wrote Plaintiff a letter that eventually prompted her to deduce that Defendant Carlson was actually attending the Ranch for his sexual addiction.

26.

As a result of information received by the Plaintiff from a representative of the sexual addiction clinic, Plaintiff was tested for genital herpes, Hepatitis, and HIV on June 24, 2015, and the results were positive for genital herpes. The Plaintiff will be required to undergo Hepatitis and HIV follow-up testing for the next three years.

27.

After receiving the aforementioned tests, Plaintiff moved back to Louisiana, but continued her employment with the Defendant Companies.

28.

As a result of contracting genital herpes from Defendant Carlson, the Plaintiff has experienced pain and suffering, chronic urinary tract infections, anxiety, hospitalization, and will be on prescription medication for the rest of her life.

29.

After Defendant Carlson's return from the sexual addiction clinic, the Plaintiff's responsibilities, role, duties and treatment changed at Defendant Companies. Plaintiff was excluded from meetings, excluded from decision making responsibilities, instructed to perform

jobs that were previously performed by her subordinates, and openly degraded, harassed and demeaned by Defendant Carlson. Members of management regularly attended her department meetings when they had previously not done so in order to intimidate Plaintiff and the employees she managed. Plaintiff's ability to perform her duties as Corporate Risk Manager Consultant and Corporate HR Director was effectively eliminated.

30.

Plaintiff reported Defendant Carlson's behavior to members of management pursuant to the Policy and Procedure Manual, including, but not limited to, Dave Derry who, upon information and belief, is and was the Chairman of Defendant Companies and the President Jerry Fromm. Mr. Derry is involved with the day-to-day operations of Defendant Companies and used to be the Vice President. Since his promotion to President in approximately August 2015, Mr. Fromm is also involved in the Defendant Companies on a day-to-day basis.

31.

As part of her employment duties, Plaintiff returned to Sioux Falls in late November 2015 to assist in the open enrollment duties for Defendant Companies' employee benefits' program.

32.

On or around December 4, 2015, Plaintiff traveled to Aberdeen to conduct open enrollment at Defendant Kyburz-Carlson with Chairman Derry.

33.

Chairman Derry, at the request of Defendant Carlson, asked Plaintiff to lunch and she complied. At the lunch, Chairman Derry informed Plaintiff that even though she was a competent employee, Defendant Carlson did not want her at Defendant Companies any longer and he was unsure what to do since this was a personal issue with Mr. Carlson and not a professional issue.

34.

Several days later, Plaintiff returned to Louisiana and received a phone call from Defendant Carlson. After several minutes of extreme verbal abuse by Defendant Carlson, he informed her that he wanted her out of "his companies immediately."

35.

After Defendant Carlson's abusive telephone call, Plaintiff was immediately admitted to the hospital for inpatient cardiac monitoring and testing.

36.

After these incidents, Plaintiff was placed on administrative leave and has not been permitted to perform any of her employment responsibilities.

## **COUNT ONE**
*Breach of Employment Contract*

37.

Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

38.

Plaintiff entered into an employment agreement with Defendant Companies. *See* Exhibit 1.

39.

Under the terms of the employment agreement, Plaintiff had a contractual right to work as the Corporate Human Resource Director/Risk Management Consultant for two years with an annual salary of $90,000 per year starting on July 1, 2015.

40.

The Plaintiff performed her obligations under the contract.

8

41.

The Defendant Companies breached the contract by constructively discharging the Plaintiff from employment, thereby causing the Plaintiff to suffer damages.

## COUNT TWO
*Negligent Transmission of a Sexually Transmitted Disease*

42.

Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

43.

Defendant Carlson owed Plaintiff a duty to exercise reasonable and ordinary care in their sexual relationship including, but not limited to, the duty to warn Plaintiff of his sexually transmitted disease and to take steps to minimize the risk of transmitting his genital herpes to her.

44.

Defendant Carlson breached that duty when he failed to warn her that he had previously been diagnosed with genital herpes and was actively treating with medications for his disease.

45.

As a direct and proximate result of Defendant Carlson's breach, Plaintiff sustained injuries and damages including, but not limited to, personal injuries which required medical treatment. Additionally, she has experienced pain and suffering, mental anguish, permanent impairment and disability, loss of enjoyment of the capacity of life, loss of past and future earned wages, past and future medical costs and expenses, and other general and special damages.

46.

Plaintiff alleges that the conduct of Defendant Carlson was willful, malicious, fraudulent, oppressive and in conscious disregard of the Plaintiff's rights. As a result of the physical and

emotional trauma that she continues to suffer, punitive damages are appropriate in an amount according to proof.

## COUNT THREE
*Fraud*

47.

Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

48.

Defendant Carlson informed Plaintiff at the commencement of their sexual relationship that he did not have any sexually transmitted diseases.

49.

Defendant Carlson knew or should have known that his representation was false.

50.

Defendant Carlson made such statement with the intent to induce Plaintiff to rely on his false representation so she would engage in unprotected sexual relations with him.

51.

Plaintiff relied on Defendant Carlson's misrepresentations regarding the status of his sexually transmitted disease and engaged in a sexual relationship with him.

52.

As a result of Defendant Carlson's conduct, Plaintiff sustained injuries and damages including, but not limited to, personal injuries which required medical treatment. Additionally, she has experienced pain and suffering, mental anguish, permanent impairment and disability, loss of enjoyment of the capacity of life, loss of past and future earned wages, past and future medical costs and expenses, and other general and special damages.

10

53.

Plaintiff alleges that the conduct of Defendant Carlson was willful, malicious, fraudulent, oppressive and in conscious disregard of the Plaintiff's rights. As a result of the physical and emotional trauma that she continues to suffer, punitive damages are appropriate in an amount according to proof.

**COUNT FOUR**

*Intentional Inflection of Emotional Distress*

54.

Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

55.

Defendant Carlson engaged in unprotected sexual relations with Plaintiff without informing her of his previous genital herpes diagnosis.

56.

Defendant Carlson acted intentionally or recklessly to cause Plaintiff severe emotional distress as he knew or should have known that the transmission of genital herpes to Plaintiff would cause her severe emotional distress.

57.

Such conduct was extreme and outrageous and caused Plaintiff to contract the genital herpes virus.

58.

As a result of Defendant Carlson's conduct, Plaintiff suffered severe emotional distress and anguish.

11

59.

The Plaintiff suffered an extreme and disabling emotional response to Defendant Carlson's conduct.

60.

Plaintiff alleges that the conduct of Defendant Carlson was willful, malicious, fraudulent, oppressive and in conscious disregard of the Plaintiff's rights. As a result of the physical and emotional trauma that she continues to suffer, punitive damages are appropriate in an amount according to proof.

## COUNT FIVE
*Negligent Infliction of Emotional Distress*

61.

Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein

62.

Defendant Carlson negligently engaged in unprotected sexual relations with Plaintiff when he had genital herpes and thereby transmitted genital herpes to the Plaintiff.

63.

The Plaintiff suffered emotional distress.

64.

Defendant Carlson's conduct in transmitting herpes to the Plaintiff was a legal cause of her emotional distress.

65.

The Plaintiff suffered a physical manifestation of the emotional distress in that she suffered an outbreak of genital sores and was also hospitalized for heart problems induced by stress.

12

66.

Plaintiff alleges that the conduct of Defendant Carlson was willful, malicious, fraudulent, oppressive and in conscious disregard of the Plaintiff's rights. As a result of the physical and emotional trauma that she continues to suffer, punitive damages are appropriate in an amount according to proof.

## COUNT SIX
*Negligent Retention*

67.

Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

68.

Defendant Companies came to know about Defendant Carlson's openly harassing, discriminatory and aggressive behavior that he exhibited towards Plaintiff.

69.

Defendant Carlson lured Plaintiff to Sioux Falls with the promise of employment at Defendant Companies.

70.

Defendant Companies were negligent in continuing to employ Defendant Carlson with knowledge of his sexual propensities, the power he exerted over Plaintiff and his unlawful and improper treatment of Plaintiff both before and after their personal relationship was terminated.

71.

If Defendant Companies would have taken immediate action in terminating Defendant Carlson for engaging in these behaviors and sexual propensities, Plaintiff would not have been able to lure Plaintiff to Sioux Falls under the guise of employment and Plaintiff would not have had to endure months of mistreatment at Defendant Companies.

13

72.

Plaintiff suffered damages as a direct and proximate result of Defendant Companies' negligence.

72.

Based on that information and belief, Plaintiff alleges that the conduct of Defendant Companies was willful, malicious, fraudulent, oppressive and in conscious disregard of the Plaintiff's rights. As a result of the physical and emotional trauma that she continues to suffer, punitive damages are appropriate in an amount according to proof.

**COUNT SEVEN**
*Negligent Supervision*

73.

Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

74.

Defendant Companies came to know about Defendant Carlson's openly hostile, aggressive and demeaning behavior that he exhibited towards Plaintiff.

75.

Defendant Companies were fully aware of Defendant Carlson's openly harassing, discriminatory and aggressive behavior towards Plaintiff and the power that Defendant Carlson exerted over Defendant Companies' employees to treat Plaintiff the same way.

76.

Defendant Companies took no steps to secure a safe working environment for Plaintiff, knowing the public nature of the events and the potential of Plaintiff's harassment by Defendant Carlson and other management team members and employees.

14

77.

Defendant Companies did not train their managers, supervisors or any employees on proper sexual harassment policy and procedures beyond placing the information in the employee manual and Defendant Companies did not enforce those policies.

78.

Because of Defendant Companies' negligence in preventing foreseeable workplace harassment and discrimination, Plaintiff suffered intolerable, hostile working conditions

79.

Plaintiff suffered damages as a direct and proximate result of Defendant Companies' negligence.

80.

Plaintiff alleges that the discriminatory conduct of Defendant Companies was willful, malicious, fraudulent, oppressive and in conscious disregard of the rights of Plaintiff. As a result of the physical and emotional trauma that she continues to suffer, punitive damages are appropriate in an amount according to proof.

## COUNT EIGHT
*Assault/Battery*

81.

Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein

82.

Defendant Carlson intended to cause harmful or offense physical contact with the Plaintiff in that he engaged in unprotected sexual relations with Plaintiff without disclosing to her that he had genital herpes.

83.

Because of Defendant Carlson's conduct, Plaintiff contracted genital herpes, and therefore, such harmful or offensive conduct actually occurred.

84.

The Plaintiff did not consent to Defendant Carlson engaging in unprotected sexual relations with her while he was infected with genital herpes.

85.

As a result of Defendant Carlson's conduct, Plaintiff sustained injuries and damages, including, but not limited to, personal injuries which required medical treatment. Additionally, she has experienced pain and suffering, mental anguish, permanent impairment and disability, loss of enjoyment of the capacity of life, loss of past and future earned wages, past and future medical costs and expenses, and other general and special damages.

86.

Plaintiff alleges that the Defendant Carlon's conduct was willful, wanton and with a reckless disregard to her rights, entitling the Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

(1)     For compensatory, general, special, and punitive damages in an amount to be determined by the jury to compensate Plaintiff for all injuries sustained as a result of Defendants' conduct;

(2)     For Plaintiff's costs and disbursements herein;

(3)     For pre-judgment and post-judgment interest; and

(4)     For such further relief as the Court deems proper.

Dated this 8th day of March, 2016.

JOHNSON, JANKLOW, ABDALLAH,
BOLLWEG & PARSONS, L.L.P.

BY

Steven M. Johnson  (steve@janklowabdallah.com)
Shannon R. Falon  (shannon@janklowabdallah.com)
P.O. Box 2348
Sioux Falls, SD 57101-2348
(605) 338-4304

*Attorneys for the Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully demands trial by jury on all issues so triable.

Steven M. Johnson
Shannon R. Falon